THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| LONNIE NORTON,<br><br>              Plaintiff,<br><br>v.<br><br>MICHAEL PARSONS et al.,<br><br>              Defendants. | **MEMORANDUM DECISION AND ORDER, DISMISSING SOME DEFENDANTS AND CLAIMS, AND SCHEDULING FURTHER LITIGATION**<br><br>Case No. 4:20-CV-38 DN<br><br>District Judge David Nuffer |

      Plaintiff, inmate Lonnie Norton, filed this *pro se* civil-rights action, *see* 42 U.S.C.S. § 1983 (2025),[1] proceeding *in forma pauperis*, *see* 28 *id.* § 1915. (ECF Nos. 1, 4-5.)

      After screening Plaintiff's initial complaint, (ECF No. 5), the Court requested waiver of service from Utah Department of Corrections (UDOC) defendants, Michael Parsons and Danny White (dentists), and F. McNiell and Romero (sergeants), to answer claims--under the Federal and Utah Constitutions--of inadequate dental treatment and denial of certain publications. (ECF No. 9.) Discovery disputes and motions for preliminary injunctive relief (Plaintiff) and summary judgment (Defendants) ensued. (ECF Nos. 18, 20-26, 29-31, 33-37, 44-45, 48-52, 55, 58, 61-63.) Preliminary injunctive relief and summary judgment were both denied. (ECF No. 71.) An interlocutory appeal of the denial of preliminary injunctive relief spanned ten months before the denial was affirmed. (ECF Nos. 72, 103.) Most recently, continuing discovery issues and

---

[1] Section 1983 reads in pertinent part:
    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.S. § 1983 (2025).

Plaintiff's efforts to expand the litigation prompted the Court to grant Plaintiff's motion for the Court to request *pro bono* counsel to represent Plaintiff here. (ECF No. 106.)

Plaintiff then filed the Amended Complaint (AC).[2] (ECF No. 117.) In it, he keeps original defendants Parsons and White and "Jane/John Does," but drops McNiell and Romero. (*Id.*) He adds new defendants Steve Gehrke, Mike Haddon, Brian Redd, and Utah Department of Corrections (UDOC). (*Id.*) He maintains federal and state constitutional claims of inadequate dental care and denial of certain publications. (*Id.*) For his alleged injuries, Plaintiff seeks damages. (*Id.* at 17-19.)

Having now screened the AC, (ECF No. 117), under its statutory review function,[3] the Court dismisses some claims and defendants and orders further litigation as to remaining claims and defendants.

### A. *SUA SPONTE* DISMISSALS FOR FAILURE TO STATE CLAIM

### 1. STANDARD OF REVIEW

Assessing a complaint for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th

---

[2] The Amended Complaint is mistakenly labeled "Second Amended Complaint," but it is the first amended complaint. (ECF No. 117.)

[3] The screening statute reads:
> (a) Screening.--The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.S. § 1915A (2025).

Cir. 2007). Dismissal is appropriate when--though the facts are viewed in the plaintiff's favor--the plaintiff has not posed a "plausible" right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554-55); *see also id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original). Also, "[f]acts, not conclusions, must be pleaded--'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-212, 2023 U.S. Dist. LEXIS 19808, at *8 (D. Wy. Jan. 27, 2023) (alteration in original) (quoting *Ashcroft*, 556 U.S. at 678).

      As the Court reviews the sufficiency of Plaintiff's allegations, it painstakingly does so per individual defendant, per cause of action. *See Williams v. Utah Dep't of Corr*., 928 F. 3d 1209, 1212 (10th Cir. 2019) (stating plaintiff must "explain[] which . . . prison-official defendants are liable for what improper conduct"). Indeed, § 1983 cases often include a list of defendants, like

> the government agency and a number of government actors sued in their individual capacities. . . . [I]t is particularly important in such

>circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original) (citing *Twombly*, 550 U.S. at 565 n.10). When a complaint "fails to isolate the allegedly unconstitutional acts of each defendant," the plaintiff has not carried the burden of giving "adequate notice as to the nature of the claims against each." *Id.* at 1250. For instance, when a complaint uses "the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.*

Finally, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

## 2. DEFENDANT UDOC

Plaintiff sues UDOC for violating his federal and state constitutional rights as to inadequate dental treatment, and his federal constitutional rights as to denial of certain publications. (ECF No. 117, at 11-16.) Regarding Plaintiff's federal claims, inadequate dental treatment is actionable under the Eighth Amendment ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."), and denial of publications is actionable under the First Amendment ("Congress shall make no law . . . abridging the freedom of speech . . . .").[4]

---

[4] Plaintiff is a state prisoner. The First and the Eighth Amendments pertain to the states through the Fourteenth Amendment. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996) (First Amendment); *Rhodes v. Chapman*, 452 U.S. 337, 344-45 (1981) (Eighth Amendment). So all Plaintiff's claims

### a. Federal Constitutional Issues

Under the Eleventh Amendment, sovereign immunity blocks actions for money damages against states and state agencies. *See Couser v. Gay*, 959 F.3d 1018, 1022 (10th Cir. 2020); *Norton v. Parsons*, No. 23-4055, 2024 U.S. App. LEXIS 2109, at *7 (10th Cir. Jan. 31, 2024) (unpublished) (citing *Wagoner Cnty. Rural Water Dist. v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009) ("The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state *and arms of the state*." (Emphasis added.))). "UDOC is an arm of the State of Utah." *Norton*, 2024 U.S. App. LEXIS 2109, at *7 (citing Utah Stat. Ann. § 64-13-2 (2024) (creating UDOC as "state authority for corrections")). UDOC is thus immune from the federal constitutional claims against it, which are dismissed. *See Buchanan v. Oklahoma*, 398 F. App'x 339, 342 (10th Cir. 2010) ("[S]tate-operated detention facilities do not have a separate legal identity from the state, and therefore are not 'persons' who have the capacity to be sued under § 1983.").

### b. State Constitutional Issue

Plaintiff asserts that--by "promulgating a policy of pulling the teeth of inmates rather than performing restorative dental work"--UDOC violated the Utah Constitution's Unnecessary Rigor Clause. (ECF No. 117, at 13.)

> Article I, section 9 of the Utah Constitution states that "[p]ersons arrested or imprisoned shall not be treated with unnecessary rigor." "[T]his provision applies where a prisoner shows that a prison employee was deliberately indifferent to the prisoner's medical needs or subjected him to clearly excessive or deficient or unjustified treatment." *State v. M.L.C.*, 933 P.2d 380, 385 (Utah 1997) (brackets and quotation).

---

could be deemed brought under the Fourteenth Amendment. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (acknowledging plaintiffs may have invoked Fourteenth Amendment merely because Eighth Amendment applies to states solely through Fourteenth Amendment). To simplify analysis and avert confusion, the claims here are addressed in keeping with the amendment providing the relevant substantive protections. *See id*.

*Childress v. Harms*, 449 F. App'x 758, 762 (10th Cir. 2011) (unpublished).[5]

However, "the State of Utah has not waived and still retains its sovereign immunity for almost all state constitutional violations," including the Unnecessary Rigor Clause. *Davey v. Blood*, No. 2:23-CV-442, 2024 U.S. Dist. LEXIS 141275, at *15 (D. Utah Aug. 7, 2024). UDOC, as an arm of the State of Utah, is thus immune from suit on Plaintiff's state constitutional claim.

### c. Conclusion

Based on sovereign immunity, UDOC is immune from this suit bringing federal and state constitutional claims. Consequently, UDOC is dismissed without prejudice from this action.

### 3. DEFENDANTS GEHRKE, HADDON, AND REDD

Plaintiff alleges that Gehrke, Haddon, and Redd breached his federal constitutional right to free speech when certain publications meant for him were rejected based on policies they promulgated. (ECF No. 117.)

### a. Allegations Taken as True for this Order Only

As UDOC employees, Gehrke is bureau director, Haddon was executive director, and Redd is executive director. (ECF No. 117, at 3.) In 2019, Plaintiff had two scenarios when he was denied publications intended for him.

---

[5] *Childress*, 449 F. App'x at 758, is an unpublished opinion, but the Court may rely on unpublished Tenth Circuit opinions to the extent their reasoned analyses are persuasive in the case at bar. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit holds:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored . . . . However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

*United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

The Court concludes that *Childress*, 449 F. App'x at 758, and the other unpublished cases cited here, have persuasive value as to material issues and will help dispose of the issues in this decision.

The first involved gift books ordered by a third party from an online bookstore, "hamiltonbook.com," which sent the books by mail, addressed directly to Plaintiff in prison. (*Id.* at 10.) Plaintiff received a denial document from UDOC stating "the package lacked authorization." (*Id.*) This was based on adherence to a policy prohibiting inmates from receiving "a publication gifted to an inmate by [a] third party that ordered the publication from a bookstore/publisher with instructions that the bookstore/publisher mail the publication to the inmate." (*Id.*) After Plaintiff filed a grievance, Plaintiff received "a letter authored by Steve Gehrke (bearing the letterhead of Mike Haddon, the Executive Director of the UD[O]C)," which told Plaintiff "that the gift-publication was appropriately rejected in accordance with the prison's 'legitimate penological interest in ensuring the safety and security of the facility and those inside it.'" (*Id.*) As to the defendants, Plaintiff states that Gehrke, Haddon, and Redd (as Haddon's successor) "violated Plaintiff's 1st Amendment right . . . by promulgating a policy or custom of restricting gift-publications and/or instructing employees of the UD[O]C to enforce a blanket prohibition on all gift-publications." (*Id.* at 15.)

The second scenario involved Plaintiff's order of "books from The Human Rights Defense Center." (*Id.* at 11.) Plaintiff was again told by UDOC that "the package lacked authorization." (*Id.*) "A 'staff response' authored by Sgt. F. McNeill" informed Plaintiff that his "package was rejected because the Human Rights Defense Center is not listed on the Free Book supplier list," which is the lone list to which "the publisher-only rule pertains." (*Id.*) As to the defendants, Plaintiff states that Gehrke, Haddon, and Redd (as Haddon's successor) transgressed his First Amendment rights "by promulgating a custom or policy of restricting publications to be received by inmates from an unconstitutionally narrow list of approved vendors and/or by

instructing employees of the UD[O]C to only allow inmates to receive publications from a narrow list of approved vendors." (*Id.* at 16.)

### b. Legal Standards

### i. Grievance denial

Grievance denial alone, not connected to "violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see also Walker v. Hickenlooper*, 627 F. App'x 710, 715 (10th Cir. 2015) (unpublished) (stating Tenth Circuit has "squarely held that a prison official's denial of a grievance cannot create liability under § 1983"); *Davis v. Ark. Valley Corr. Facility*, 99 F. App'x 883, 843 (10th Cir. 2004) ("Copying [the warden] with correspondence outlining his complaints about medical care, without more, does not sufficiently implicate the warden under § 1983.").

### ii. Supervisory liability

A plaintiff may not establish supervisory liability solely by asserting that defendants oversaw personnel who violated the Constitution. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Further, mere knowledge of an underling's allegedly unconstitutional conduct is not enough to hold a supervisor liable. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

First, the plaintiff must allege that the supervisors' subordinates breached plaintiff's federal rights. *Dodds*, 614 F.3d at 1195. Then, the plaintiff must further allege an "affirmative link between the supervisor's conduct and the violation." *Id.*; *see also Ashcroft*, 556 at 676 (stating, in asserting § 1983 claims against state government actor in individual capacity, "plaintiff must plead that each Government-official defendant, *through the official's own individual actions, has violated the Constitution*" (emphasis added)). Such a connection may be

adequately shown by alleging as follows: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199; *see also Brown v. Montoya*, 662 F.3d 1152, 1164-65 (10th Cir. 2011) ("[S]upervisory liability must be based on [a defendant's] Policy."). Stated another way, there must be "an 'affirmative' link . . . between the unconstitutional acts by [the supervisors'] subordinates and [the supervisors'] 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.'" *Dodds*, 614 F.3d at 1200-01 (quoting *Rizzo v. Goode*, 423 U.S. 362, 371 (1976)).

The mere allegations that a defendant "maintains a position of authority . . . and instituted [a] policy . . . are insufficient to plausibly claim . . . personal participation." *Pittman v. Williams*, No. 26808, 2023 U.S. App. LEXIS 26808, at *4-5 (10th Cir. Oct. 10, 2023) (unpublished).

### iii. First Amendment tenets governing prison mail

Given "the delicate balance that prison administrators must strike between the order and security of the internal prison environment and the legitimate demands of those on the 'outside' who seek to enter that environment," prisoners' rights may be curbed in ways that "would raise grave First Amendment concerns outside the prison context." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Thus, "[i]nmates have a First Amendment right to receive information while in prison [but only] to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison." *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004). So "when a prison regulation impinges on inmates' [First Amendment rights], the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (stating courts must

"accord *substantial deference* to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them" (emphasis added)).

To determine such regulations' validity, courts must apply *Turner*'s four-factor test. *Turner*, 482 U.S. at 89; *see also Thornburgh*, 490 U.S. at 413 (holding *Turner* analysis applies to prison mail regulations). The test is fact-centered, demanding a court examine the following: (1) the association between the regulation and any legitimate governmental interest offered to uphold it; (2) whether prisoners have access to alternate ways to exercise the right; (3) the effect of accommodating the right on personnel, other prisoners, and institutional resources; and (4) whether apparent, simple alternatives are available to fully satisfy prisoners' rights at a *de minimis* expense. *See Turner*, 482 U.S. at 90-91; *see also Jones v. Salt Lake Cnty.*, 503 F.3d 1147, 1153-54, 1163 (10th Cir. 2007) (discussing *Turner* factors on summary-judgment review).

However, the Court cannot make factual findings under Rule 12(b)(6), which merely "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). Acknowledging tension between *Turner*'s deferential standard and the *Iqbal*/*Twombly* plausibility standard, the Tenth Circuit has suggested that a First Amendment challenge to prison mail regulations "must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) (emphasis in original); *see also Al-Owhali v. Holder*, 687 F.3d 1236, 1241 (10th Cir. 2012) (stating that, "while it is critical that a complaint address *Turner*'s core holding, the four *Turner* factors need not be part of the analysis at the pleading stage"). In other words, in the *Turner* context, Plaintiff must "recite[] facts that might well be unnecessary in other

contexts" to adequately state a claim upon which relief may be granted. *See Gee*, 627 F.3d at 1185. This does not mean that Plaintiff "must identify every potential legitimate interest and plead against it," but "[i]t is sufficient that he plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Id.*

"The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton*, 539 U.S. at 132; *see Al-Owhali*, 678 F.3d at 1241 (stating inmate-plaintiff is burdened with showing lack of legitimate, rational basis for mail restrictions).

### iv. Consideration of documents outside the complaint

Though a screening of a complaint to determine whether it states a claim upon which relief may be granted must typically "test[] the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true," *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994), the Court may consider other documents, like those (a) incorporated by reference in the complaint, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); (b) "referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); and (c) eligible for "judicial notice," *Tellabs*, 551 U.S. at 322. Courts may also take judicial notice of their "own files and records, as well as facts which are a matter of public record." *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000).

### c. Application of Legal Standards to Individual Defendants

### i. Gehrke and Haddon

Plaintiff lumps Gehrke and Haddon (and Redd) together and lodges substantially the same allegations and claims against them all.[6] (ECF No. 117.)

---

[6] As an aside, this is instantly one strike against the validity of the allegations. *See Robbins*, 519 F.3d at 1250 (noting, when complaint does not isolate each defendant's allegedly unconstitutional acts, plaintiff has not

Regarding only Gehrke and Haddon, Plaintiff alleges they were at the relevant times UDOC bureau director and executive director, respectively. (ECF No. 117, at 2-3.) The only times their names are mentioned in the AC are as follows: (a) "In a letter authored by Steve Gehrke (bearing the letterhead of Mike Haddon, the Executive Director of the UD[O]C), Plaintiff was informed that the gift-publication was appropriately rejected in accordance with the prison's 'legitimate penological interest in ensuring the safety and security of the facility and those inside it.'" (*Id.* at 10.) (b) Gehrke and Haddon violated Plaintiff's First Amendment rights by promulgating policies or customs of restricting (i) "gift-publications and/or instructing employees of the UD[O]C to enforce a blanket prohibition on all gift-publications without any basis related to a legitimate penological interest," and (ii) "publications to be received by inmates from an unconstitutionally narrow list of approved vendors and/or by instructing employees of the UDC to only allow inmates to receive publications from a narrow list of approved vendors." (*Id.* at 15-16.)

### ii. Grievance denial

Under this heading, the Court mainly focuses on Plaintiff's allegation: "In a letter authored by Steve Gehrke (bearing the letterhead of Mike Haddon, the Executive Director of the UD[O]C), Plaintiff was informed that the gift-publication was appropriately rejected in accordance with the prison's 'legitimate penological interest in ensuring the safety and security of the facility and those inside it.'" (*Id.* at 10.) The question here is exclusively whether these allegations describing Gehrke's words found in a letter, and Haddon's name on the letterhead,

---

carried burden of giving "adequate notice as to the nature of the claims against each"--e.g., when complaint uses list of individually-named defendants but does not distinguish "what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed").

represent an affirmative link between each of these defendants and Plaintiff's First Amendment claim as to the denied gift-publications.

The original complaint attached an October 11, 2019 letter from Defendant Gehrke, in which he identifies himself as "Director, Administrative Services." (ECF No. 5-2, at 42.) The letterhead shows, "Utah Department of Corrections Administrative Services Bureau," with Defendant Mike Haddon shown as "Executive Director," and Gehrke shown as "Bureau Director." (*Id.*) The letter is a "Level Three Grievance" response about the "alleged incorrect denial of purchased items" from "Hamiltonbook.com," which denial was attributed to the vendor's unauthorized status, based on "the publisher-only rule," and which rule, Gehrke notes, "is in place out of deference to safety and security of the institution and to ensure only trusted vendors are able to send in these items." (*Id.*)

Due to the fact that this document is apparently referred to in the AC, (ECF No. 117, at 10), and was attached to the original complaint by the very same party referring to it in the AC (which seems to indicate Plaintiff would not dispute the document's authenticity), *see Jacobsen*, 287 F.3d at 941, the Court strays from "the four corners of the complaint"--regarding just the letter--to include it in the AC's screening, *Mobley*, 40 F.3d at 340. Alternatively, in considering this letter, the Court takes "judicial notice of [its] own files and records," which include this letter as "a matter of public record," *Van Woudenberg*, 211 F.3d at 568.

All this being said, because grievance denial alone "does not establish personal participation under § 1983," *Gallagher*, 587 F.3d at 1069, this letter by itself cannot have created First Amendment liability for Gehrke and Haddon as to the denial of the gift-publications mailed to Plaintiff by Hamiltonbook.com. (ECF Nos. 5-2, at 42; 117, at 10.) Any such claim is thus dismissed.

### i.ii. Supervisory liability

The AC describes Gehrke and Haddon as directors, then--with no allegations in between--skips straight to an allegation of them promulgating policies of forbidding delivery to inmates of gift-publications and publications ordered outside a "narrow list of the UD[O]C's approved vendors." (ECF No. 117, at 16.) But the AC does not provide any intermediate allegations to support the leap from Defendants' director positions to these exact defendants being the policymakers on UDOC's mail processes. In fact, the AC gives no hint (as it should have) to shed light on "how [Plaintiff] had personal knowledge that [Gehrke or Haddon] were involved in [policymaking]." *Sperry v. Wildermuth*, No. 5:16-CV-3222, 2023 U.S. Dist. LEXIS 13444, at *14 (D. Kan. Aug. 2, 2023). Instead, Plaintiff's allegations are conclusory statements, in that they "refer[] to the expression of 'a factual inference without stating the underlying facts on which the inference is based.'" *Kellum v. Mares*, 657 Fed. App'x 763, 770 (10th Cir. 2016) (unpublished) (quoting *Black's Law Dictionary* (10th ed. 2014))). And, conclusory allegations are "not entitled to the assumption of truth," *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012), nor are they sufficient to state a claim--in this case, of supervisory liability, *see Iqbal*, 556 U.S. at 679-80 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

So, under tenets of supervisory liability, to state a valid claim here, Plaintiff was first required to allege that the supervisors' subordinates breached his federal rights. *Dodds*, 614 F.3d at 1195. Though such an allegation is not explicit in the AC. Then, Plaintiff must further allege an "affirmative link between the supervisor's conduct and the violation." *Id.* Yet, as set forth above, Plaintiff's sparse allegations on this point are conclusory at best. The mere allegations that

a defendant "maintains a position of authority . . . and instituted [a] policy . . . are insufficient to plausibly claim . . . personal participation." *Pittman v. Williams*, No. 26808, 2023 U.S. App. LEXIS 26808, at *4-5 (10th Cir. Oct. 10, 2023) (unpublished).

On this basis of Plaintiff's failure to adequately allege their personal participation, Plaintiff's First Amendment claims against Gehrke and Haddon are dismissed.

### i.iii. Elements of First Amendment cause of action

As an alternative basis for dismissal, the Court now examines Plaintiff's inadequate pleading of elements of his First Amendment causes of action.

What is fatal to Plaintiff's claims here is that a First Amendment challenge to prison mail regulations "must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." *Gee*, 627 F.3d at 1188. This is Plaintiff's burden. *See Overton*, 539 U.S. at 132 ("The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."); *Al-Owhali*, 678 F.3d at 1241 (stating inmate-plaintiff is burdened with alleging lack of legitimate, rational basis for mail restrictions).Yet, Plaintiff's allegations do not include those sufficient facts but instead, as in the last section, are conclusory, with only the unadorned statement that UDOC's rules attacked in this action were "without any basis related to a legitimate penological interest." (ECF No. 117, at 15-16.)

This scenario is on point with the *Noe* case, in which that plaintiff's AC "failed to include well-pleaded facts from which a plausible inference could be drawn that the [attacked publication] polic[ies were] not reasonably related to a legitimate penological interest." *Noe*, 2022 U.S. App. LEXIS 27777, at *15. Because plaintiffs are required to "do more than assert in a conclusory fashion that [a challenged] policy is unreasonable . . . [the *Noe* plaintiff's]

statements that '[t]his policy does not relate to any legitimate penological interest. [I]t is stopping me from receiving perfectly legitimate letters. It is "unreasonable,"' R., Vol. 2 at 163, d[id] not suffice." *Id.* at *15-16.

To allege sufficient facts supporting "the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests," *Gee*, 627 F.3d at 1188, Plaintiff could have (a) essentially pleaded a counterargument to any justifications offered in UDOC employees' replies to his grievances, *cf. Al-Owhali*, 687 F.3d at 1241 (involving "government's proffered justifications" for its "correspondence restrictions" regarding plaintiff); or (b) "even absent a proffered justification, . . . 'allege[d] facts that explain why the justifications for the complained-of acts do not apply,'" *Noe*, 2022 U.S. App. LEXIS 27777, at *15 (quoting *Gee*, 627 F.3d at 1185). In this latter situation, Plaintiff was burdened with "alleg[ing] facts from which a plausible inference could be drawn that the challenged policy is not reasonably related to the prison's interests in 'maintaining safety and internal security,' which are 'the core functions of prison administration,'" *Noe*, 2022 U.S. App. LEXIS 27777 (quoting *Turner*, 482 U.S. at 92). But, crucially, Plaintiff met none of these pleading standards.

On these grounds alone, Plaintiff's First Amendment claims fall short, warranting dismissal.

### ii. Redd

When naming Redd as a defendant, Plaintiff designates him solely as Defendant Haddon's "successor"--the "current executive director of the UD[O]C"--and never mentions him again. (ECF No. 117, at 2, 14.) Most importantly, Plaintiff attributes no actions (whether constitutional or unconstitutional) whatsoever to Redd. Redd was appointed executive director of UDOC "in May 2023." *See Utah An Official Website*, governor.utah.gov/governors-

cabinet/brian-redd (last visited Apr. 27, 2025). Meanwhile, Plaintiff's alleged constitutional deprivations around the publications at issue here occurred in 2019. In his role as UDOC's executive director, starting in May 2023, it is not possible that Redd could have promulgated the allegedly unconstitutional publications policies that beset Plaintiff in 2019. Redd is thus dismissed from this action.

### B. CLAIMS WARRANTING FURTHER LITIGATION

The Court concludes that, against Defendants Parsons and White, Plaintiff appears to have stated a claim upon which relief may be granted. (ECF No. 117.) The Court therefore requires them to answer the AC and follow the litigation schedule set forth below.

### C. ORDER

Based on the Court's screening of the Amended Complaint, **IT IS ORDERED** as follows:

**1.** Because Defendant Utah Department of Corrections is not a suable entity, and is immune from suit as an arm of the State of Utah, it is **DISMISSED** without prejudice. (ECF No. 117.)

**2.** For failure to affirmatively link Plaintiff's two First Amendment claims to any defendant, and to state a claim upon which relief may be granted, such claims and related defendants (Gehrke, Haddon, and Redd) are **DISMISSED** without prejudice. (*Id.*)

**3.** The only remaining defendants, Parsons and White, shall observe the following litigation schedule:

> **a.** Within **30 days** of this Order, file an answer to the Amended Complaint.
>
> **b.** If Defendants assert the affirmative defense of Plaintiff's failure to exhaust administrative remedies in a grievance process, Defendants must,

       **i.** within **90 days** of filing an answer, prepare and file a *Martinez* report[7] limited to the exhaustion issue; and,

       **ii.** within **120 days** of filing an answer, file a separate summary judgment motion, with supporting memorandum.

**c.** If Defendants challenge the Amended Complaint's bare allegations, Defendants shall, within **60 days** of filing an answer, file a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6).

**d.** If Defendants choose not to rely on an exhaustion defense and want to pierce the Amended Complaint's allegations, Defendants must,

       **i.** within **90 days** of filing an answer, prepare and file a *Martinez* report addressing the complaint's substance; and,

       **ii.** within **120 days** of filing an answer, file a separate summary judgment motion, with supporting memorandum.

**e.** If Defendants want to seek relief otherwise contemplated under procedural rules, Defendants must file an appropriate motion within **90 days** of filing an answer.

---

[7]*Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), approved district-court practices of ordering administrators of correctional institutions to prepare reports to be included in pleadings in cases when prisoners have filed actions alleging constitutional violation against institution officials.

In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987)*,* the Tenth Circuit specified the nature and function of a *Martinez* report, saying:

> Under the *Martinez* procedure, the district judge or a United States magistrate [judge] to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports.  The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims.  This, of course, will allow the court to dig beneath the conclusional allegations.  These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

**4.** Plaintiff must, within **30 days** of its filing, respond to the *Martinez* report. Plaintiff should keep in mind that *Martinez* reports may "be used for their truth against a plaintiff if the plaintiff has been warned that failing to respond to the *Martinez* report could lead to that result." *Ortiz v. Torgensen*, 857 F. App'x 419, 426-27 (10th Cir. 2021) (unpublished). Such a warning is included here.

**5.** Plaintiff must, within **30 days** of its filing, respond to a motion to dismiss or summary-judgment motion.

**6.** Defendants shall file a reply brief within **14 days** after the date Plaintiff's opposition is filed.

**7.** Any evidence filed to support the parties' summary-judgment positions must be reviewed by the parties to ensure that **-i-** only relevant evidence is submitted (for instance, if filing medical records, ensure that only medical records applicable to the exact claims at issue are filed); and **-ii-** the numbering on the pages of all evidentiary submissions is clear on each page of each document and matches up to any references in citations to those documents in any summary-judgment motion, response, and reply. If evidentiary documents do not comply with this requirement, the summary-judgment motion, response, or reply, will be struck from the docket, subject to refiling with compliant evidentiary documents.

**8.** A motion to dismiss or for summary judgment shall be deemed submitted as of the date the reply brief is due. No hearing will be held on a motion unless the Court so orders at a later date.

DATED this 5th day of May, 2025.

BY THE COURT:

_____
JUDGE DAVID NUFFER
United States District Court